IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ELLA HOLMES, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 3:20-cv-01003-RAH-SRW |
| | )         [WO] |
| HERITAGE PROPERTY & CASUALTY | ) |
| INSURANCE COMPANY, *et al*., | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction**

This matter is before the Court on Plaintiffs' Motion to Remand (Doc. 12), the Motion to Dismiss (Doc. 10) filed by Defendants Elliot & Associates, Inc. and Alexander Rainey (collectively, the agent defendants), and the Motion to Consolidate (Doc. 17) filed by Defendant Heritage Property & Casualty Insurance Company (Heritage).  Given that "a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings," the Motion to Remand will be addressed first. *Univ. of S. Ala. v. Am. Tobacco Co*., 168 F.3d 405, 410 (11th Cir. 1999); *see id*., at 411 ("[A] federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court.")(citations omitted)).  Having reviewed the parties' submissions

1

and heard oral argument, the Court finds that the Plaintiffs' Motion to Remand is due to be granted and this case remanded to the Circuit Court of Macon County, Alabama.

## II.   Background

This case is one of two arising out of a fire that destroyed Plaintiff Ella Holmes' home in Tuskegee, Alabama. Both cases concern the homeowner insurance carrier's decision to deny coverage for the fire loss on the basis that the fire was caused by arson of which Plaintiff Ella Holmes (Holmes) and Plaintiff Betty Randolph (Randolph) allegedly played an active role.  The other case, filed several months before the instant one, is a declaratory judgment action filed by Heritage against Holmes and Randolph in the Middle District of Alabama, Case No. 3:20-cv-00539-ECM-SMD, which remains active.  Instead of filing counterclaims for breach of contract and bad faith in that case, which certainly was an option and probably a compulsory one at that, Holmes and Randolph strategically chose to contest service in that case and then file a separate lawsuit against Heritage in state court in Macon County, Alabama.  In that state court action, Holmes and Randolph also sued the agent defendants (both of whom are Alabama residents like Holmes and Randolph) for negligence, wantonness, breach of contract and suppression, primarily claiming that the agent defendants had underinsured the home that was destroyed in the fire. Unsurprisingly, Heritage removed the case to this Court.

As it concerns the pending motions, a discussion of the facts is necessary. In October 2019, Holmes purchased the home from Randolph for somewhere between $450,000 to $500,000.[1] (Doc. 1-1 at 2.) Third-party financing was not a part of the transaction. Instead, Randolph provided owner-financing to Holmes, and retained a mortgage interest in the home.

Holmes then contacted the agent defendants in an effort to obtain insurance coverage for the home and its contents. (Doc. 1-1 at 2.) Holmes claims to have relied upon the agent defendants to determine "the appropriate level of coverage for her home" including an amount that would be "needed to replace her home if a total loss occurred" because Holmes paid the agent defendants a "fee" and "entered into a contract" to accomplish that endeavor. (*Id*. at 2-3, 11.)

The agent defendants were able to obtain coverage through an insurance policy issued by Heritage, with dwelling coverage limits of $625,000 and personal property limits of $468,750. (*Id*. at 3.) According to Holmes, the agent defendants "did not provide a copy of the insurance policy to Plaintiff Holmes." (Doc. 1-1 at 3.)

A little over two months later, on January 1, 2020, the home was completely

---

[1] During oral argument, counsel stated that the designated sales price was somewhere between $450,000 and $500,000. Counsel also stated that, in a recent Chapter 13 bankruptcy proceeding, Randolph declared the home as having a value of $495,240. (*See* BK Case No. 19-30428, Bankr. M.D. Ala., Dkt. No. 1 at 10.) A review of Randolph's bankruptcy petition filed on 2/14/19 also shows that the home was encumbered by at least two mortgages.

destroyed in a fire. (Doc. 1-1 at 3.) Holmes filed a claim with Heritage. (*Id.*) That claim, evidenced through a Sworn Statement in Proof of Loss (Proof of Loss), sought payment of $1,646,708.66, inclusive of the contents that were allegedly destroyed in the fire. (Doc. 10-1 at 3.) According to Holmes, "[d]uring the pendency of the claim it was determined that Plaintiff Holmes' home was underinsured," meaning the "amount of insurance coverage provided by Defendants was not sufficient to pay the cost for replacement on Plaintiff Holmes' home." (Doc. 1-1 at 5.)

Heritage investigated the claim, including the cause of the fire, and on July 24, 2020, notified Holmes by letter that it was denying Holmes' claim on the basis that Holmes and Randolph had caused or participated in causing the fire and had provided false information to Heritage. (*Id.* at 5.) The letter specifically noted that Heritage's fire investigation determined that there were two separate, unconnected points of origin located within the home and that the two fires had been deliberately set and were the result of an intentional act. (*Id.*)

In addition, the letter not only denied the claim in total but it also rejected the substantive merits of the claimed monetary loss of $1,646,708.66. (Doc. 10-1 at 3.) For example, the letter accused Holmes of fraudulent conduct in claiming that she had over $457,000 in personal contents inside the home. (*Id.* at 3.) The letter further pointed to inconsistencies between Holmes' and Randolph's statements in that Holmes claimed some of the contents were owned by Randolph, whereas Randolph

claimed no ownership whatsoever of any contents in the home. (*Id.*)

Five days later, on July 29, 2020, Heritage filed a declaratory judgment action against Holmes and Randolph in the Middle District of Alabama, Case No. 3:20-cv-00539-ECM-SMD, seeking a declaratory judgment that Heritage was relieved of any obligation under the insurance policy to pay on the claim. (Doc. 23-1.) In that action, neither Holmes nor Randolph filed answers. Instead, they filed motions to dismiss challenging the sufficiency of process against them and claiming that there was no live controversy between the parties. (*See* Doc. 8, Case No. 20-cv-00539.) While challenging Heritage's attempt to litigate coverage in federal court, Holmes and Randolph filed a separate suit against Heritage on December 8, 2020, in state court in the Circuit Court of Macon County, Alabama. (Doc. 1-1.)

### III.   Standard of Review

An action in state court may be removed to federal court when the federal court has diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed. *See Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 90 (2005) (citing 28 U.S.C. § 1441(b)). Remand is the necessary corollary of a federal district court's diversity jurisdiction, which requires complete diversity of citizenship.

When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a "fraudulent joinder," *see Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997), and a federal court may appropriately assert its removal diversity jurisdiction over the case. A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id.* The defendant must make such a showing by clear and convincing evidence. *Henderson v. Wash. Nat. Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006).

The burden of establishing both federal jurisdiction and compliance with the procedures for removal set forth in 28 U.S.C. § 1446 rests with the removing defendant. *Sibilia v. Makita Corp.*, 674 F.Supp.2d 1290, 1291 (M.D. Fla. 2009) (citations omitted). And the burden of proving fraudulent joinder "is a heavy one." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The court must evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. *Crowe*, 113 F.3d at 1538. The court must make "these

6

determinations based on the plaintiff's pleadings at the time of removal" but may "consider affidavits and deposition transcripts submitted by the parties." *Id.* "If there is even a possibility that a state court would find that the complaint states a cause of action against ... the resident defendant [ ], the federal court must find that the joinder was proper and remand the case to state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011); *see also Pacheco de Perez,* 139 F.3d at 1380 ("Where a plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court."). In other words, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Stillwell*, 663 F.3d at 1333 (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)).

## IV.  Discussion

### A. The Jurisdictional Issue

In their Motion to Remand, Holmes and Randolph raise a host of issues, ranging from technical ones such Heritage's failure to attach all of the state court pleadings to the removal petition, to substantive ones such as the lack of fraudulent joinder of the agent defendants. As the fraudulent joinder issue is the issue of primary concern and the one that is dispositive on the Motion to Remand, the Court will address it. And again, to avoid fraudulent joinder, Holmes and Randolph need

not have a winning case; they "need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287.

Here, Holmes and Randolph make claims of negligent/wanton procurement, breach of contract, negligent /wanton hiring, training, monitoring, and supervision, and fraudulent suppression against the agent defendants.  In particular, Holmes and Randolph claim that the agent defendants undertook a duty, through the receipt of an inspection fee and through their efforts to obtain homeowners' insurance, to procure an appropriate amount of insurance coverage to rebuild the home in its entirety.  (Doc. 1-1.)  They failed that duty and harmed Holmes and Randolph in procuring structure coverage limits of only $625,000 and personal contents limits of $468,750 when, according to them, the fire caused $1,646,708.66 in damage as reflected in the Proof of Loss.

As justification for its removal of the case from state court, Heritage contends that "[t]here are no set of circumstances whereby the Plaintiffs can recover against the insurance agency and the agent in this case since it is undisputed that the insurance policy issued by Heritage was in full force and effect on the date of the accident. It is further undisputed that the amount of the policy limits are clear and Plaintiffs are bound by the terms and conditions contained within that document under Alabama law."  (Doc. 18 at 6.)  Heritage goes on to argue that "the "policy limits are immaterial now that Heritage has denied the claim for alleged arson." (*Id*.)

Embracing the same general argument, the agent defendants seek dismissal of the claims against them, arguing "the policy limits are immaterial now that Heritage has denied the claim for alleged arson." (Doc. 10 at 2.) As the agent defendants couch it, "Plaintiffs have failed to allege that any act or omission by Elliott or Rainey proximately caused Plaintiffs' damages." (*Id*. at 6.)

Holmes and Randolph dispute this and argue that not only have they pleaded facially plausible claims against the agent defendants but that they have pleaded very legitimate claims at that. First, they note they are suing the agent defendants for their own acts and omissions associated with the procurement of the insurance policy, and therefore cases like *Exum v. State Farm Fire & Casualty Co*., 821 F.Supp.2d 1285 (M.D. Ala. 2011), are easily distinguishable. They also note that they are not suing the agent defendants for breach of contract or bad faith associated with Heritage's claim decision, and therefore cases like *Butler v. Allstate Indemnity Co., Inc*., No. 3:09-cv-838-WKW, 2010 WL 381164 (M.D. Ala. Jan. 25, 2010), are also distinguishable.

Instead, according to Holmes and Randolph, they are suing the agent defendants for their own actions in failing to procure an insurance policy with sufficient coverage that would pay for the repair or replacement of the now-destroyed home. Such a claim is cognizable under Alabama law, so say Homes and Randolph, as shown by several Alabama appellate court decisions including those

9

in *Kanellis v. Pacific Indemnity Co.*, 917 So. 2d 149 (Ala. Civ. App. 2005), and *Crook v. Allstate Indemnity Co.*, 314 So. 3d 1188 (Ala. 2020). *See also Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060 (Ala. 1978) (affirming verdict against insurance agent for negligent failure to procure sufficient insurance after insurance carrier denied claim).

What these cases do confirm is that Alabama recognizes a cause of action against an agent for failure to procure insurance, even insufficient insurance coverage limits. The Defendants argue that such a theory is not feasible here because Heritage already has denied Holmes' and Randolph's claim. If Holmes and Randolph were not challenging Heritage's claim denial, the Defendants' argument would have plausible merit. But that is not the situation here. Instead, Holmes and Randolph are suing Heritage for its claim denial, arguing that Heritage breached the insurance policy and acted in bad faith when it denied their claim. If successful against Heritage, contractual damages available to Holmes and Randolph would be capped at the insurance policy's coverage limits, which would be insufficient to compensate Holmes and Randolph for the full extent of their Proof of Loss, assuming that the Proof of Loss was truthful and accurate. The difference between the amounts set forth in the Proof of Loss and the insurance coverage limits arguably would constitute damages proximately caused by the agent defendants if they, in fact, failed to procure sufficient insurance coverage. In that case, the agent

10

defendants' actions would have been the proximate cause of damage to Holmes and Randolph. Given the standard applicable to the fraudulent joinder analysis, the Court must evaluate these factual allegations in the light most favorable to Holmes and Randolph and must resolve any uncertainties about the applicable law in their favor.

The agent defendants argue that the Heritage insurance policy was clear as to its coverage limits, and therefore no cause of action against the agent defendants exists. Presumably, this argument is based on the line of cases holding that an insured is contributorily negligent as a matter of law when the insured is given the policy showing the maximum amount of insurance coverage. *See, e.g.*, *Kanellis v. Pacific Indemnity Co.*, 917 So. 2d 149 (Ala. Civ. App. 2005). However, according to the Complaint, which this Court must assume as true given the applicable standard, Holmes and Randolph were never sent a copy of the policy before the fire loss. (*See* Doc. 1-1 at 3 ("The Defendant did not provide a copy of the insurance policy to Plaintiff Holmes.").)

In supplemental briefing, the agent defendants point to the Alabama Supreme Court's recent decision in *Somnus Mattress Corp. v. Hilson*, 280 So. 3d 373 (Ala. 2018), as legal support that the Complaint fails to allege that the agent defendants owed Holmes and Randolph a legal duty as a matter of law. The *Somnus* decision, however, recognizes that a duty can arise in certain limited circumstances such as

when there a special relationship, a separate agreement, additional compensation, or an affirmative misrepresentation about the contents of a policy. *See Franklin County Commission v. Madden*, No. 3:19-cv-0230-CLS, 2019 WL 2161145 (N.D. Ala. May 17, 2019) (explaining and applying *Somnus*). In the two opinions cited by the agent defendants that reference *Somnus*, the courts concluded that they had subject matter jurisdiction because the plaintiffs' complaints failed to make any such allegations. *See Franklin County Commission*, 2019 WL 2161145, at * 3 ("there has been no allegation of a special relationship, separate agreement, additional compensation, or affirmative misrepresentation on the part of either of those defendants"); *Goostree v. Liberty Nat'l Life Ins. Co.*, Case No. 1:19-CV-00071, 2019 WL 3338251, at * 5 (N.D. Ala. July 25, 2019) ("no contract existed between Mr. Bice and the Padgetts, and the Padgetts have failed to plead in the complaint a special relationship existed").

But here, Holmes makes allegations in the Complaint that could *possibly* give rise to a duty against the agent defendants. Among others, Holmes alleges that she "contacted Elliot concerning providing Homeowner's insurance that provided the appropriate level of coverage for her home," that she "communicated with Defendant Rainey," that she "relied upon [the agent defendants'] expertise, skill, and experience," that she paid a "home inspection fee," that "Defendants received payment from Plaintiff Holmes for an inspection of her home," that "Defendant Rainey determined the amount of insurance coverage Plaintiff needed to replace her

12

home if a total loss occurred," that "Defendants failed to inspect the Plaintiff's home to determine the appropriate amount of coverage required for replacement of her home in the event of a total loss," and that the "amount of insurance provided by Defendants was not sufficient to pay the cost for replacement of Plaintiff Holmes' home." (Doc. 1-1 at 2-3, 5, 10-11.) Aside from general tort claims for negligence, Holmes alleges that the agent defendants committed a breach of contract because she paid the inspection fee and "entered into a contract" under which the agent defendants were to "provide a certified inspection of the premises and determine the proper amount of coverage needed for the home including dwelling replacement cost" and to "ensure that Plaintiff Holmes' home was adequately insured and/or protected" and further that the agent defendants breached this agreement "by failing to provide a certified inspection of Plaintiff Holmes' home and failing to provide adequate insurance for replacement cost of her home." (Doc. 1-1 at 11.) These allegations are sufficient to meet the low threshold applicable here, especially for a breach of contract claim against the agent defendants.

Maybe Holmes and Randolph committed arson or somehow played a sinister role in causing the fire, as Heritage asserted in its claim denial, that destroyed the home and its contents a few months after Randolph filed for bankruptcy protection and a mere two months after the purported sale by Randolph to Holmes. The circumstances surrounding the fire certainly make that a plausible conclusion. But

13

maybe they played no role, as they assert in their Complaint. In any event, it is not for this Court to preside over the resolution of that issue as this Court lacks jurisdiction. Perhaps it will be for the judge presiding over the declaratory judgment case, but that will be a battle for another day in another court.[2] Accordingly, the Defendants have failed to show that the agent defendants were fraudulently joined and therefore the Motion to Remand is due to be GRANTED.

### B. Costs and Attorney's Fees Pursuant to 28 U.S.C. § 1447(c)

In their Motion To Remand, Holmes and Randolph ask this Court to award costs, including attorney's fees, under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Eleventh Circuit has noted:

> The Supreme Court has held that even though 28 U.S.C. § 1447(c) allows a court to require payment of just costs and attorneys' fees incurred as a result of removal, such fees "should not be awarded when the removing party has an objectively reasonable basis for removal." The Supreme Court has further instructed that the "appropriate test for

---

[2] From all that appears, Holmes' and Randolph's claims for breach of contract and bad faith against Heritage are compulsory counterclaims that must be asserted in the declaratory judgment action currently pending before a different judge of this Court. *See, e.g., Ex parte Nautilus Ins. Co.*, 260 So. 3d 823 (Ala. 2018); *Ex parte The Cincinnati Insurance Companies*, 806 So. 2d 376 (Ala. 2001). But given this Court's lack of subject matter jurisdiction, it is not for this Court to make that determination or to rule upon the propriety of the motion to consolidate and motion to dismiss filed by the Defendants. *See, e.g., Landrum v. Delta Intern. Machinery Corp.*, No. 1:08-cv-140-WKW, 2008 WL 2326324, at *5-*6 (M.D. Ala. June 3, 2008) ("Until and unless a situation arises in which there exists complete diversity of citizenship, this court may not sever claims, it may not dismiss parties, it may do nothing but remand this action.")).

awarding fees under § 1447(c)" is to balance between deterring "removals sought for the purpose of prolonging litigation and imposing costs on the opposing party," and safeguarding defendants' statutory right "to remove as a general matter, when the statutory criteria are satisfied."

*Bujanowski v. Kocontes*, 359 F. App'x 112, 113-14 (11th Cir. 2009) (internal citations omitted). "But an award of fees under § 1447(c) does not require a showing that the defendant's position was 'frivolous, unreasonable, or without foundation.'" *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 890 (11th Cir. 2011) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138–39 (2005)).

Despite the Court's decision to remand this case, the Court concludes that Heritage had an objectively reasonable basis for removal. It does not appear that removal was done for the purpose of prolonging the litigation, so the balance tips in favor of allowing Heritage under these circumstances to remove as a general matter, without fear of costs and attorney's fees, especially when it is the Plaintiffs who have strategically elected not to file their claims against Heritage in the declaratory judgment case pending in this district. Accordingly, the request for fees and costs is DENIED.

## V. Conclusion

For the reasons set forth herein, it is

ORDERED as follows:

(1) The Plaintiffs' Motion to Remand (Doc. 12) is **GRANTED;**

(2) This matter is **REMANDED** to the Circuit Court of Macon County, Alabama; and,

(3) The Clerk is DIRECTED to take appropriate steps to effect the remand.

DONE this the 30th day of November, 2021.

                                                 _s/ R. Austin Huffaker, Jr._
                                                 R. AUSTIN HUFFAKER, JR.
                                                 UNITED STATES DISTRICT JUDGE